IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Myron Anthony Williams, ) | Civil Action No.: 2:11-379-MBS-BHH |
| ) | |
| Petitioner, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Warden, Broad River ) | |
| Correctional Institution, ) | |
| ) | |
| Respondent. ) | |

  The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment (Dkt. # 22).

  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02, D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

  The Petitioner brought this habeas action on February 11, 2011. (Dkt. # 1 Attach. # 2.)[1] On July 19, 2011, the Respondent moved for summary judgment. (Dkt. # 22.) By order filed July 20, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. # 24.) On August 25, 2011, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion. (Dkt. # 27.)

---

[1] *Houston v. Lack*, 487 U.S. 266 (1988) (holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## UNDERLYING FACTS[2]

On September 6, 2002, the Petitioner's daughter ("Victim"), a student at Eau Claire High School, was caught partially undressed with a male student in a locker room. Anna Downs, the school guidance counselor, interviewed the Victim about the incident. The Victim told Downs that the last person she had sex with was "her daddy," the Petitioner. Downs then called the Department of Social Services ("DSS"), the school resource officer, and made all the necessary reports.

At trial, the Victim, then sixteen years old, testified that the Petitioner started touching her "private" when she was eight to ten years old. The sexual contact included oral sex, digital penetration, and sexual intercourse. The Victim testified the incidents occurred more than once a month and continued until she was fifteen. The Victim also testified, without objection, that during the times of the incidents, they would watch pornographic movies.

Beverly Conyers, an investigator with the Columbia Police Department, testified she interviewed the Victim on September 6, 2002. The Victim informed Conyers that the Petitioner began assaulting her when she was around ten or eleven, the assaults occurred about four times a month, and the assaults were ongoing. The Victim indicated that the last time she had sex with the Petitioner was September 4, 2002. Conyers interviewed the Petitioner on September 11, 2002. In a statement, the Petitioner admitted to having sex with the Victim one time a year earlier.

Conyers questioned the Petitioner about a video the Victim stated he had shown her during some of the incidents. The Petitioner informed Conyers that he had an "R" rated DVD from Blockbuster entitled "Crimes of Passion" in his truck, and he described the cover of the video. The State sought to introduce a synopsis of the video found on Blockbuster's website and an X-rated copy of the movie matching the Petitioner's description. The

---

[2]These facts are taken almost verbatim from the South Carolina Court of Appeals' decision, *State v. Williams*, Opinion No. 2006-UP-167 (S.C. Ct. App. filed March 20, 2006).

Petitioner objected to the admission of the video and the synopsis arguing they were irrelevant and prejudicial. The court held both pieces of evidence could be admitted "based on earlier testimony."

## **PROCEDURAL HISTORY**

The Petitioner is currently incarcerated in the Broad River Correctional Institution. In December 2002, he was indicted for criminal sexual conduct ("CSC") with a minor second degree and, he was also indicted for CSC with a minor second degree in August 2003. (App. 557-560.) Attorneys Josh Kendrick and Debbie Chapman represented the Petitioner and a jury trial was held November 17-18, 2003, with the Honorable Reginald I. Lloyd presiding. The Petitioner was convicted as charged and Judge Lloyd sentenced the Petitioner to twenty (20) years on the first CSC charge and twenty (20) years, suspended upon the service of five years, to run consecutively, on the second CSC charge. (App. 443.) The Petitioner appealed.

Appellate Defender Wanda P. Hagler represented the Petitioner on appeal and on June 13, 2005, she filed a brief raised the following issues on appeal:

> 1) The lower court erred in allowing a pornographic movie tape into evidence at trial because this was irrelevant and prejudicial evidence and also inadmissible prior bad act evidence.
>
> 2) The lower court erred in denying appellant's motion for a mistrial pursuant to testimony which included a prejudicial remark characterizing appellant as a pervert.

(App. 511.) On March 20, 2006, the South Carolina Court of Appeals affirmed the Petitioner's conviction in an unpublished opinion, *State v. Williams*, Opinion No. 2006-UP-167 (S.C. Ct. App. filed March 20, 2006). The Court of Appeals issued the remittitur on April 5, 2006.

While the Petitioner's direct appeal was pending, the Petitioner filed his first application for post-conviction relief ("PCR") on February 2, 2004. As grounds for relief, he alleged vindictiveness in sentencing and that counsel had failed to properly file a notice of

appeal. On March 26, 2004, the Honorable L. Casey Manning granted the Petitioner's motion to withdraw the PCR application and dismissed the action without prejudice.

On October 17, 2006, the Petitioner filed a second PCR application raising the following grounds for relief:

(a) Evidence used against me was "not" without doubt;

(b) No signed receipt stating movie was x-rated movie was not viewed;

(c) Prosecutor committed perjury by lying to jury about contents of movie;

(d) Police investigator had no witness and did not record our conversation hearsay only

(App. 448.) On March 13, 2007, the Petitioner filed an amended PCR application alleging the following grounds for relief, quoted verbatim:

> a. Counsel failed to thoroughly challenge all evidence that was brought against him to make sure all claims against him were true facts. Such as contents of the movie; a signed receipt a contract stating or showing that the movie as in fact x-rated. Even a partial viewing of the movie would have given the jury sure facts to convict him of those charges. But since none of this was done, they had no facts. How could the jury find him guilty on this charge? Was this righteous and fair judgment? No, the jury convicted him without knowing the facts about this evidence. The jury was never property instructed by the judge or prosecutor/solicitor and his counsel failed to ask questions to make true facts known.
>
> b. His counsel failed to demand all prior medical records so that check up results could be made known and age at time of check up. If **** was caught in the boy's bathroom naked, how long had this been going on prior to getting caught? His counsel failed to property question prosecutor/solicitor.
>
> c. His counsel failed to make the police investigator prove that what she testified under oath was true and facts. By the mouth of two or three witnesses, can words or statements be justified? If seems a position such as a police investigator, the investigator should have the accused statements audio recorded or the police investigator should always be required by law to have another witness present. Without this how can one side of a statement over the over? Is this fair in our court system? No Our court system says justice for all, and innocent until proven guilty. Fair justice was not done.

> d. The jury had no concrete evidence to rightly convict him. One or more lies from the police investigator and from the prosecutor/solicitor could easily lead to another.

(App. 457-458.) Attorney Charles T. Brooks, III, represented the Petitioner. On March 20, 2008, an evidentiary hearing was before the Honorable James R. Barber. On March 31, 2008, Judge Barber denied relief. (App. 499-506.) The Petitioner appealed.

Appellate Defendant M. Celia Robinson represented the Petitioner on appeal. On January 12, 2009, she filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina raising the following issues:

> 1. Did the PCR judge err in denying relief despite trial counsel's deficiently failing to investigate the case, particularly counsel's failure to explore and corroborate the victim's possession of a lighter and a condom and counsel's failure to investigate and obtain evidence as to the availability and contents of a video submitted in evidence by the prosecution?
>
> 2. Did the PCR judge err in denying relief despite prosecutorial misconduct where the State submitted false testimony in evidence which contributed to petitioner's conviction, deprived him of a fundamentally fair trial, and constituted a due process violation?

(Cert. Pet. 2.) On November 10, 2010, the South Carolina Supreme Court denied the petition and issued the remittitur on November 23, 2010.

In this petition for habeas relief, the Petitioner does not allege any particular ground for relief. Instead, the Petitioner sets forth the following in the supporting facts section of his petition, quoted verbatim:

> As I stated several times before during the course of my trials and hearings these facts would prove the prosecutor and the police investigator committed perjury (to the courts) It's a fact that if I had been allowed the custodian of records from Blockbusters to be present at the hearings (They/he/she) would have given statements concerning the rating and contents of the movie thats in question The courts declared under oath that the movie was pornographic.

(Habeas Pet. 6.) In an attachment to his petition, the Petitioner also argues there was not a business record exception for admissibility of the introduction of State's Exhibit # 6. (Habeas Pet. Attach.)

5

## **APPLICABLE LAW**

**Summary Judgment Standard**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to

preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*quoting Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. *Id.* at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. *See id.* at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. *Id.* Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. *Id.* at 786. "If this standard is difficult to meet, that is because it was meant to be." *Id.* Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in judgment)).

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*,

221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a

prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## **DISCUSSION**

Initially, the Respondent contends that because the Petitioner did not raise any particular ground for relief in his petition, the entire petition should be summarily dismissed. (Resp't 's Mem. Supp. Summ. J. Mot. at 9.) Although the Petitioner does not set forth any specific grounds in his petition, as set forth above, the Petitioner in the supporting facts section of his petition raises issues regarding the introduction during his trial of a movie which was portrayed as pornography. The prosecution alleged that the Petitioner had watched the movie with the minor Victim. Furthermore, in his response to the Respondent's Summary Judgment Motion, the Petitioner specifically raises two grounds relating to this

alleged issue: prosecutorial misconduct and ineffective assistance of trial counsel.[3] Further, in the attachment to his petition, the Petitioner argues there was not a business record exception for admissibility of the introduction of the movie. (Habeas Pet. Attach.) While the Petitioner may not have specifically set out these issues as grounds for relief in his petition, he has raised them in his pleadings. Accordingly, the undersigned addresses these grounds below.

**Prosecutorial Misconduct**

The Petitioner alleges that the trial court erred in failing to grant a mistrial when the prosecutor allowed a witness to present falsified testimony regarding the movie "crimes of Passion." (Pet'r's Mem. Opp. Summ. J. Mot. 2-4.)

At trial, Investigator Beverly Conyers of the Columbia Police Department testified that the Petitioner voluntarily went to the police station and gave a statement in which he stated that he "needed help," and admitted that he had sex with the Victim one time a year earlier. (App. 226; 228-229.) Conyers testified that the Petitioner also admitted to watching movies with the Victim, but he denied that they were X-rated. (App. 231.) She testified that he had told her that a DVD and a DVD player were in his truck. *Id.* Conyers testified that the Petitioner stated that the movie was "Crimes of Passion," the cover was red with a woman on it, and the Petitioner had rented it from Blockbuster. (PCR App. 231-32.) Conyers testified that she investigated the movie and discovered from Blockbuster's website that it rented an R-rated version of the "Crimes of Passion" movie and in its synopsis indicated it was sexual in nature. (App. 233.) Trial counsel objected on the ground that the movie was not relevant and had not been shown to be pornographic. (App. 233-34.) The trial court overruled the objection. (App. 234.)

---

[3]The Petitioner also states he is raising a "witness interference claim." (Pet'r's Mem. Opp. Summ. J. Mot. at 2.) However, there is no argument in his memorandum on this specific claim. Accordingly, this issue is not discussed in this report.

The prosecution then introduced an X-rated version of the movie and Conyers testified that the X-rated version had a red cover with a woman on it as the Petitioner had described. (App. 234-35.) Trial counsel again objected on relevancy and stated it was prejudicial. (App. 235.) The trial court again overruled the objection. *Id.* The prosecution asked Conyers what type of movie "Crimes of Passion" was and again trial counsel objected. (App. 235.) The trial court sustained the objection and Conyers was allowed only to read from the movie cover and not offer her opinion as to what type of movie it was. (App. 236.) On cross-examination, Conyers admitted that she was not sure that the Petitioner had rented the exact movie about which she had testified earlier. (App. 273.)

On direct appeal, the Petitioner argued that the trial court had erred in allowing a pornographic videotape into evidence because it was irrelevant, prejudicial, and inadmissible prior bad act evidence. The South Carolina Court of Appeals disagreed and held that the video was relevant as the Victim had testified that the Petitioner would play "pornos" while the sexual assaults occurred and, therefore, evidence that the Petitioner possessed a movie of a sexual nature during this period, whether it was rated X or R, tended to make the alleged sexual assaults more probable.

To succeed on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's conduct was improper and that it "prejudicially affected his substantial rights so as to deprive him of a fair trial." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002). "In reviewing a claim of prosecutorial misconduct, we review the claim to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* In order to succeed on a claim of prosecutorial misconduct based on perjured trial testimony, a petitioner must first show that the testimony was, in fact, perjured, and second, that the Government knowingly used the perjured testimony in order to secure the conviction. *Boyd v. French*, 147 F.3d 319, 329-30 (4th Cir.1998). "The knowing use of perjured testimony constitutes a due process violation when there is any

14

reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* at 330 (internal citation and quotation omitted).

Initially, the undersigned notes that generally a petitioner may be entitled to a new trial if he can show that the prosecutorial misconduct deprived petitioner of a fair trial, resulting in denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). However, if the act of misconduct was known during the trial, the defendant must make an objection at trial to preserve the issue for review. Similarly, if a petitioner fails to raise an allegation of prosecutorial misconduct on appeal, he may not raise it on post conviction. *Bailey v. United States*, 2003 WL 24901468 at 2 (2003).  Claims that could have been raised on appeal, but were not, are procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (citations and internal quotation marks omitted).

Here, the Petitioner's claim that the trial court should have declared a mistrial on the basis of prosecutorial misconduct is procedurally defaulted.  As this claim was know during trial, the Petitioner could have been objected and raised this claim on direct appeal, but he did not.  *Hastings v. Knowlin*,  2010 WL 3730925 (D.S.C. 2010).[4]   Furthermore, the Petitioner does not sufficiently allege any basis for finding that cause and prejudice exists to excuse his procedural default, nor does he allege that he is actually innocent.  His failure to raise this claim on direct review has resulted in it being procedurally defaulted. *Id.* [5] Accordingly, this claim should be dismissed.

---

[4] In his PCR appeal, the Petitioner alleged that the PCR court erred "in denying relief despite prosecutorial misconduct where the State submitted false testimony in evidence which contributed to petitioner's conviction, deprived him of a fundamentally fair trial, and constituted a due process violation." However, this claim was raised in the context of an ineffective assistance claim and is discussed herein in that context.

[5] It also bears noting that the undersigned does not believe that the Petitioner's allegations rise to the level of prosecutorial misconduct. *United States v. Scheetz,* 293 F.3d 175, 185 (4th Cir. 2002).

**Ineffective Assistance of Trial Counsel**

The Petitioner also contends that trial counsel was ineffective for failing to investigate the availability and content of the movie admitted into evidence by the prosecution and "to explore and corroborate the victim's possession of a lighter and a condom." (Pet'r's Mem. Opp. Summ. J. Mot. at 5.)

To prove ineffective assistance of counsel, the Petitioner must show that trial counsel's performance was constitutionally deficient under the two-part test announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong of *Strickland* requires that Petitioner demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 687-88. In applying *Strickland* to a claim of ineffective assistance, "[a] lawyer's performance is entitled to a strong presumption of reasonableness," *Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir.1993) (*citing Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir.1989)), and in reviewing a claim that appellate counsel was ineffective, counsel is entitled to a presumption that the decision to pursue certain claims but not others was based on a decision by counsel as to "which issues were most likely to afford relief on appeal." *Id*. *Strickland's* second prong requires the petitioner to show that the deficient performance actually prejudiced his defense. *Strickland*, 466 U.S. at 687. In other words, the petitioner must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.*

At the PCR hearing, Conyers testified that she looked up the Blockbuster website which indicated it rented an R-rated version of "Crimes of Passion" and the synopsis indicated it had sexual content. (App. 233-234; 236-237.) Conyers however testified that she had an unrated or X-rated version of the movie at the time of the trial, and the cover matched the description given by the Petitioner. (App. 234-235.) Conyers acknowledged that the video she referred to at trial was not a video from Blockbuster, but rather a copy of the movie as described by the Petitioner. (App. 266.)

16

At the PCR hearing, the Petitioner testified that the he had admitted the sexual abuse in a statement, but only in an attempt to see his children. (App. 303.)  He further acknowledged that he had told Conyers about the movie and that he had rented the movie from Blockbuster. (App. 304; 346.) However, he denied it was the same video the investigator had in court. (App. 347.)  Trial counsel testified that he objected to the movie on several grounds, but he did not believe he had grounds to seek a mistrial on the basis of prosecutorial misconduct in regard to the admission of the movie.

The PCR judge found trial counsel's performance was not deficient as counsel had made "several objections . . . in an attempt to limit or prevent the admission of the video and or its contents." (App. 505.)   The record shows that trial counsel made three objections regarding the movie at trial - when it was offered at trial on the ground it lacked relevance (App. 233); when Conyers read the description of content (App. 235); and when Conyers described the film (App. 235).  However, his objections were overruled. The PCR judge also found no prejudice because the Petitioner had testified that he rented movies only from Blockbuster and the last movie he rented was "Crimes of Passion." (App. 504-505.)

As for the lighter and condom, at trial, the Petitioner testified that a few days before the Victim told the school counselor about the sexual abuse, the Petitioner had found a lighter and condom in her purse and they had argued about them and some older boys who had been talking with the Victim. (App. 288-291.)  The Victim's mother testified that the Petitioner had told her he found a condom and lighter in the Victim's bookbag or purse, but she testified that she never saw them and she did not believe the Petitioner. (App. 167-68.) She also testified that she asked the Victim about the items, but the Victim denied having a condom. (App. 167.)

The PCR judge noted the Petitioner had alleged that his trial counsel should have "done more to develop" the importance of the lighter and condom allegedly found by the Petitioner in the Victim's pocket. The PCR judge further noted trial counsel had testified that he recalled petitioner focusing on the lighter and condom, but there was nothing to

17

corroborate that information. (App. 502.) The PCR judge did not specifically rule on this issue. In any event, the Petitioner has not set forth what trial counsel could have discovered had he performed any further investigation into the movie or the lighter and condom.

In regard to the lighter and condom, the Petitioner also did not present any corroborating evidence at the PCR hearing. Further, in regard to the movie, the Petitioner also did not present any additional evidence, not already presented at trial, which trial counsel could have discovered had he performed further investigation. *See e.g., Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir.1996) ("However, an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.") (*citing Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir.1990) (finding petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony)). Additionally, the Petitioner did not present any evidence demonstrating prejudice because he did not establish that a reasonable investigation would have uncovered evidence corroborating his testimony that he found a lighter and condom in the Victim's possession or additional evidence about the movie. *See Bassette*, 915 F.2d at 940-41 (holding when challenging the adequacy of counsel's investigation, defendant must show what an "adequate" investigation would have uncovered). Accordingly, the PCR court did not err in finding trial counsel was not ineffective and this claim should be dismissed.

**Business Records Exception**

The Petitioner alleges that the State's Exhibit 6 was improperly admitted at trial. The Petitioner's claim is that evidence was erroneously admitted under state law. (Habeas Pet. Attach.)[6] Such a claim is not cognizable in a federal habeas action.

---

[6] The Petitioner contends that State's Exhibit # 6 should not have been admitted. (Habeas Pet. Attach.) State's Exhibit # 6 is a bra. (App. 6.) However, from the Petitioner's argument, it is apparent that the Petitioner was actually referring to State's Exhibit # 23 which is a synopsis from the Blockbuster website regarding the movie "Crimes of Passion." (App. 6-7; 233-234.)

18

"[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding "federal habeas corpus relief does not lie for errors of state law"). Admissibility rulings will support the grant of federal habeas relief only when the alleged error infringes upon a specific constitutional right or is so prejudicial that it amounts to the denial of due process. *See Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000). Therefore, the issue before the court is not whether the trial court erred in admitting this evidence, but whether the admission resulted in a trial so fundamentally unfair as to deny the Petitioner due process of law. The undersigned can find no such violation in the record of this case. Accordingly, this claim should be dismissed.

## **CONCLUSION**

The state court decisions were not contrary to, nor an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 22) be GRANTED and the Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                            s/Bruce Howe Hendricks
                                            United States Magistrate Judge

September 16, 2011
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).